UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|---|---|---|---|
| Title | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Patricia Blunt | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT (DKT. 10);**

**PLAINTIFFS' MOTION TO REMAND PURSUANT TO 28 U.S.C. § 1447 (DKT. 12);**

**PLAINTIFFS' MOTION FOR LEAVE TO FILE LATE OPPOSITION TO DEFENDANT'S MOTION TO DISMISS (DKT. 21)**

**I.     Introduction**

Anthony Loaiza and Jose Landaverde brought this putative class action against Kinkisharyo International, LLC ("Kinkisharyo," "Defendant"). The Complaint advances the following causes of action: (i) violation of Cal. Lab. Code §§ 510 and 1198 for unpaid overtime, (ii) violation of Cal. Lab. Code §§ 226.7 and 512(a) for unpaid meal period premiums, (iii) violation of Cal. Lab. Code § 226.7 for unpaid rest period premiums, (iv) violation of Cal. Lab. Code §§ 1194, 1197, and 1197.1 for unpaid minimum wages, (v) violation of Cal. Lab. Code §§ 201 and 202 for final wages not timely paid, (vi) violation of Cal. Lab. Code § 204 for wages not timely paid during employment, (vii) violation of Cal. Lab. Code § 226(a) for non-compliant wage statements, (viii) violation of Cal. Lab. Code § 1174(d) for failure to keep requisite payroll records, (ix) violation of Cal. Lab. Code §§ 2800 and 2802 for unreimbursed business expenses, and (x) violation of Cal. Bus. & Prof. Code § 17200. Dkt. 1-1 at 2.

On September 4, 2019, Defendant removed the action. Dkt. 1. On September 12, 2019, Defendant filed a Motion to Dismiss Plaintiffs' Complaint (the "Motion to Dismiss"). Dkt. 10. On October 10, 2019, Defendant filed a Notice of Non-Opposition by Plaintiffs to Defendant's Motion to Dismiss, which was based on Plaintiffs' failure to file a timely opposition. Dkt. 14. On October 11, 2019, Plaintiffs filed a Response to Defendant's Notice of Non-Opposition by Plaintiffs to Defendant's Motion to Dismiss, which stated that Plaintiffs' failure to file a timely opposition to the Motion to Dismiss was due to a calendaring error by counsel. Dkt. 15. On October 15, 2019, Defendant filed a reply to Plaintiffs' response. Dkt. 16.

On October 25, 2019, Plaintiffs filed a Motion for Leave to File Late Opposition to Defendant's Motion to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|---|---|---|---|
| Title | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

Dismiss (the "Motion for Leave"). Dkt. 21. The Motion for Leave attached Plaintiffs' Opposition to Defendant's Motion to Dismiss Plaintiffs' Complaint (the "Motion to Dismiss Opposition"). Dkt. 21-2. Defendant filed an opposition to the Motion for Leave (the "Motion for Leave Opposition"). Dkt. 27. Defendant also filed a reply in support of the Motion to Dismiss (the "Motion to Dismiss Reply"). Dkt. 30.

On October 4, 2019, Plaintiffs filed a Motion to Remand Pursuant to 28 U.S.C. § 1447 (the "Motion to Remand"). Dkt. 12. Defendant filed an opposition to the Motion to Remand (the "Motion to Remand Opposition"). Dkt. 22. Plaintiffs filed a reply in support of the Motion to Remand (the "Motion to Remand Reply"). Dkt. 26.

A hearing on the three motions was conducted on February 10, 2020. Dkt. 39. For the reasons stated in this Order, the Motion for Leave is **GRANTED**, the Motion to Remand is **DENIED** and the Motion to Dismiss is **GRANTED-IN-PART** and **DENIED-IN-PART**.

II. **Motion to Remand**

    A.     Factual Background

        1.     Allegations in the Complaint

Plaintiffs have brought this putative class action on behalf of the following proposed class: "All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California." Dkt. 1-1 ¶ 14.

The Complaint alleges that Loaiza was employed from "approximately January 2017 to approximately March 2018." Dkt. 1-1 ¶ 19. The Complaint alleges that Landaverde was employed from 'approximately January 2017 to approximately March 2018." *Id.* ¶ 20.

The Complaint alleges that Defendant "engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California." Dkt. 1-1 ¶ 27. "This pattern and practice involved, *inter alia*, failing to pay them for all regular and/or overtime wages earned and for missed meal periods and rest breaks in violation of California law." *Id.*

The Complaint alleges that the "'amount in controversy' for the named Plaintiffs, including but not limited to claims of compensatory damages, restitution, penalties, wages, premium pay, and pro rata share of attorney['s] fees, is less than seventy-five thousand dollars ($75,000)." Dkt. 1-1 ¶ 1.

        2.     Rath Declaration

In support of the Motion to Remand Opposition, Defendant filed the Declaration of Melissa Rath (the "Rath Declaration"). Dkt. 22-1. Rath is employed by Defendant as "the Administration, Contracts, Purchasing Senior Manager." *Id.* ¶ 1. Rath provides information about the "corporate structure" and citizenship of Defendant. *See id.* ¶ 2-3. Rath also declares that she has "access to Defendant's records relating to its current and former employees" and has "personally reviewed Defendant's business

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|---|---|---|---|
| Title | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

records, including records pertaining to Defendant's current and former employees who are in the putative class as defined by the Complaint." *Id.* ¶ 4.

Rath declares that, based on her review of relevant records, Defendant "employed around 790 hourly, non-exempt employees in California during the Class Period," defined as any time between July 10, 2015 and the present. *Id.* ¶ 5. Based on a review of "data related to the dates putative class members started and ended their employment," Rath "determined that approximately 484 employees separated from their employment with Defendant between July 10, 2016 and the present." *Id.* ¶ 6.

Based on a review of "payroll records Defendant keeps in the regular course of business," Rath "determined that the putative class members worked an average of around 9.07 hours per business day during the Class Period" and "that they worked an average of approximately 402 days each during the Class Period." *Id.* ¶ 7. Although the "hourly rate of pay for putative class members varied year to year," Rath determined, based on a review of "payroll information kept by Defendant in the regular course of business and available to" Rath, that "the putative class members' average hourly rate of pay throughout the Class Period was $21.08." *Id.* ¶ 8.

Rath also declares that she is "familiar with Defendant's labor relations," and that "the majority of the putative class members are union workers -- around 653 of 790." *Id.* ¶ 9. Rath declares that these union workers are "represented by the International Brothers of Electrical Workers, Local 11 (the 'Union'), and their employments are governed by a collective bargaining agreement between Defendant and the Union. The CBA contains the union workers' wage rates, as well as provisions relating to meal and rest periods, employer control, and binding and exclusive grievance-arbitration provisions." *Id.* ¶ 10. Attached to the Rath Declaration is what is designated as a "true and correct copy of the collective bargaining agreement." *Id.*; *see* Dkt. 22-1 at 6 (the "CBA"). Based on "personnel records for Plaintiffs Anthony Loaiza and Jose Landaverde," Rath "determined that they worked for Defendant as a Subassembly Technician and Wire Assembly Technician, respectfully" and that "[b]oth of their employments with Defendant were governed by the CBA." Rath Decl., Dkt. 22-1 ¶ 11.

    B.    Analysis

        1.    <u>Federal Question Jurisdiction under LMRA</u>

            a)    Legal Standards

Section 301 of the Labor Management Relations Act ("LMRA") "vests federal courts with jurisdiction to hear suits 'for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . without respect to the amount in controversy or without regard to the citizenship of the parties.'" *McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1009 (9th Cir. 2018) (quoting 29 U.S.C. § 184(a)). "By enacting the LMRA, Congress completely preempted state law for certain labor-related claims." *Id.* "In these areas, 'the preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization. Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.'" *Id.* (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23 (1983)). "In other words, a civil complaint raising claims preempted by § 301 raises a federal question that can be removed to a federal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|---|---|---|---|
| Title | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

court." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019).

"Critically, 'not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301.'" *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016) (quoting *Allis-Chalmers Corp v. Lueck*, 471 U.S. 202, 211 (1985)). "[T]he Supreme Court has stressed that '§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law.'" *Curtis*, 913 F.3d at 1152. "For this reason, '[s]etting minimum wages, regulating work hours and pay periods, requiring paid and unpaid leave, protecting worker safety, prohibiting discrimination in employment, and establishing other worker rights remains well within the traditional police power of the states,' and claims alleging violations of such protections will not necessarily be preempted, even when the plaintiff is covered by a CBA. *Id.* at 1152 (quoting *Alaska Airlines v. Schurke*, 898 F.3d 904, 919-20 (9th Cir. 2018) (en banc)).

The Ninth Circuit has adopted a two-step inquiry to determine whether a claim is preempted under § 301. *Curtis*, 913 F.3d at 1152. *First*, if the "asserted cause of action involves a 'right [that] exists solely as a result of the CBA," then "the claim is preempted, and [the] analysis ends there." *Id.* (alteration in original) (quoting *Kobold*, 832 F.3d at 1032; *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007)). "The essential inquiry is this: Does the claim seek 'purely to vindicate a right or duty created by the CBA itself[?]'" *Id.* (alteration in original) (quoting *Schurke*, 898 F.3d at 921).

*Second*, if a "plaintiff's state law right is substantially dependent on analysis" of the CBA, then the claim is preempted. *Curtis*, 913 F.3d at 1153 (quoting *Kobold*, 832 F.3d at 1033). This second step "turns on whether the claim cannot be resolved by simply 'look[ing] to' versus 'interpreting' the CBA." *Id.* (quoting *Kobold*, 832 F.3d at 1033). In this context, "interpretation" is "construed narrowly" and a state claim may "avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA." *Id.* "[C]laims are only preempted to the extent there is an active dispute over 'the meaning of contract terms.'" *Id.* (quoting *Schurke*, 898 F.3d at 921).

        b)     Application

           (1)    First Cause of Action: Cal. Lab. Code §§ 510, 1198

The First Cause of Action alleges violations of Cal. Lab. Code §§ 510 and 1198 based on alleged failure to pay overtime wages. Dkt. 1-1 ¶¶ 49-57. Section 510(a) provides, *inter alia*, that hours in excess of a 40-hour workweek or an 8-hour workday must be compensated at one-and-one-half rate of pay. However, Section 510(a) does not apply to an employee working pursuant to "[a]n alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to Section 514." Section 514 provides that Section 510 does not apply to "an employee covered by a valid collective bargaining agreement" that contains certain provisions.[1] As *Curtis* explains, "the default definition of overtime and overtime rates in section 510 does not apply to an employee who is subject to a qualifying CBA." 913 F.3d at 1153-54. Therefore, if the CBA that applies to an employee is a "qualifying CBA" carved out from Section 510 by Section 514, then the right to overtime pay "exists solely as a result of

---

[1] Such an agreement must "expressly provide[] for the wages, hours of work, and working conditions of the employees" and "provide[] premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|---|---|---|---|
| Title | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

the CBA" and "therefore is preempted under § 301." *Curtis*, 913 F.3d at 1154 (quoting *Kobold*, 832 F.3d at 1032).

Although Sections 510 and 514 collectively may create some uncertainty, *Curtis* resolved it. Section 510(a)(2) carves out only employees working pursuant to an "alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to Section 514," Section 514 states that Section 510 does not apply to any employee covered by a qualified CBA and does not mention alternative workweek schedules.[2] However, *Curtis* addresses the matter at issue: "[I]f a CBA satisfies the requirements of section 514, the requirements of section 510(a) 'do not apply.'" 913 F.3d at 1154. Subsequent district court decisions relying *Curtis* have applied this holding without requiring evidence of an alternative workweek schedule worked by an employee, so long as a qualifying CBA governs the work of relevant employees. *E.g.*, *Linebarger v. Graphic Packaging Int'l, LLC*, No. SA CV 20-00309 JVS (JDEx), 2020 WL 1934958, at *5 (C.D. Cal. Apr. 22, 2020); *Franco v. E-3 Sys.*, No. 19-CV-01453-HSG, 2019 WL 6358947, at *3 (N.D. Cal. Nov. 8, 2019); *Diaz v. Sun-Maid Growers of California*, No. 1:19-CV-00149 LJO (SKO), 2019 WL 1785660, at *7 (E.D. Cal. Apr. 24, 2019).

The CBA is a "qualifying CBA" under Section 514 and *Curtis*. The Plaintiffs do not disagree. *See* Dkt. 21-2 at 18-22.The CBA contains express provisions regarding wages, hours of work and working conditions. See Dkt. 22-1 at 12 (working conditions); Dkt. 22-1 at 14-17 (work week, working hours and overtime); Dkt. 22-1 at 28 (wages). The CBA includes Appendix A, which provides a table of wages by skill classification. *Id.* at 32-33. These wages exceed the threshold for the applicable California minimum wage for each corresponding year. *Compare* Dkt. 22-1 at 32-33 *with* Industrial Welfare Commission, *History of California Minimum Wage*, https://www.dir.ca.gov/iwc/minimumwagehistory.htm; Industrial Welfare Commission, *Official Notice California Minimum Wage*, https://www.dir.ca.gov/iwc/MW-2019.pdf.[3]

Plaintiffs present two alternative arguments, neither of which is persuasive. *First*, Plaintiffs argue that, because the Complaint alleges only state law claims and does not refer to the CBA, there is no LMRA preemption. *See* Dkt. 21-2 at 18-20. Claims "style[d] as state law claims" can still be preempted by LMRA. *See Curtis*, 913 F.3d at 1151. Artful pleading cannot sidestep Section 301 preemption. *See, e.g.*, *Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401, 1406 (9th Cir. 1991); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987); *Watkins v. Woodridge Prods., Inc.*, No. CV 19-5821 PSG (MAAx), 2020 WL 949513, at *1 n.2 (C.D. Cal. Feb. 27, 2020); *Huitron v. U.S. Foods, Inc.*, No. CV 14-09402 MMM (PLAx), 2015 WL 1524398, at *3 (C.D. Cal. Mar. 31, 2015).

---

[2] The CBA provides that the "normal scheduled workweek is Monday through Friday," but the employer may establish, modify or change employee schedules "and the applicable work week." Dkt. 22-1 at 14. The CBA provides for both the usual workweek of five, eight-hour days and for an alternative workweek of four, ten-hour days. *See id.* at 15. Although Rath declares that Plaintiffs were employed under the CBA (Dkt. 22-1 ¶ 11) and the Complaint makes the general allegation that Plaintiffs worked in excess of eight hours per day "and/or" 40 hours per week (Dkt. 1-1 ¶ 26), no evidence has been presented as to whether Loaiza and Landaverde "work[ed] pursuant to . . . [a]n alternative workweek" (Cal. Lab. Code § 510).

[3] For employers of 25 or more employees: (i) $13.00 in 2020; (ii) $12.00 in 2019; (iii) $11.00 in 2018; (iv) $10.50 in 2017; (v) $10.00 in 2016.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|---|---|---|---|
| Title | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

#

*Second*, Plaintiffs argue that Section 514 is an affirmative defense that does not give rise to preemption on a motion to dismiss. Dkt. 21-2 at 20. Plaintiffs fail to address *Kobold* or *Curtis*. Plaintiffs' reliance on earlier cases that are inconsistent with both is unpersuasive. *See* Dkt. 12 at 25; Dkt. 26 at 8. *Placencia v. Amcor Packaging Distribution, Inc.*, No. SA CV 14-0379 AG (JPRx), 2014 WL 2445957, at *2 (C.D. Cal. May 12, 2014), was decided before *Curtis* and *Kobold*. It relied on Ninth Circuit caselaw that was subsequently deemed to have been overruled. *See Curtis*, 913 F.3d at 1155. Similarly, *Macias v. Levy Premium Foodservices Limited Partnership*, No. 2:14-cv-09220 SVW (PLAx), 2015 WL 12747900 (C.D. Cal. Feb. 12, 2015), relies on the same Ninth Circuit precedent and *Placencia* to reach a conclusion that is not consistent with *Curtis*. Thus, *Macias* held that Section 514 is only an affirmative defense that does not provide a basis for preemption, but *Curtis* holds that Section 514 bars any claim under Section 510 and leads to preemption. *See* 913. F.3d. at 1153-54.

Because there is a sufficient showing that the CBA is a qualifying CBA under Section 514 and *Curtis*, and Plaintiffs do not contest whether the CBA is qualifying under Section 514, the overtime provisions of Section 510 do not apply to Plaintiffs. Therefore, their overtime claims are based on rights that arise solely from the CBA. *See Curtis*, 913 F.3d at 1152. Consequently, the first cause of action for unpaid overtime is preempted under step one of the Ninth Circuit test, and the removal of this action was permitted. *Id.*

2.     Supplemental Jurisdiction

Where there is original jurisdiction over a claim, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) ("A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." (quoting *Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003)). "The decision to exercise [supplemental] jurisdiction remains discretionary with the district court." *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1174 (9th Cir. 2002).

A district court may decline to exercise supplemental jurisdiction over a claim that arises out of a common nucleus of operative facts that provide the basis for a claim for which there is federal subject matter jurisdiction. Declining to exercise such jurisdiction is appropriate under the following circumstances:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c); *see also Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011).

#

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|---|---|---|---|
| Title | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

All causes of action advanced by the Complaint share a common nucleus of operative facts related to Plaintiffs' employment. *See* Dkt. 1-1. Based on the current posture of the action, the relevant factors do not support declining supplemental jurisdiction over the non-preempted state-law claims.

       3.    <u>CAFA Jurisdiction</u>

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015).

          a)    Class Size and Minimal Diversity

Plaintiffs do not challenge the minimum class size and minimal diversity requirements. *See generally* Dkt. 12. The Rath Declaration supports the assertion that there at least 100 members of the putative class. *See* Dkt. 22-1 ¶ 5. As to citizenship, limited liability companies ("LLCs") are citizens of "every state of which its owners/members are citizens." *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Defendant states that it is a limited liability company with a single member: "Kinki Sharyo Co., Ltd." Dkt. 1 at 6. Rath declares that Kinki Sharyo Co., Ltd. is the "sole member" of Defendant, is incorporated in Japan, and has its principal place of business in "Higashi-Osaka, Japan." Dkt. 22-1 ¶¶ 2-3. Because Defendant's sole member is a citizen of Japan, *see* 28 U.S.C. § 1332(c)(1), Defendant is also a citizen of Japan. Given that each Plaintiff is a citizen of California, there is minimal diversity as required by 28 U.S.C. § 1332(d)(2).

          b)    Amount in Controversy

             (1)    <u>Legal Standards</u>

"In determining the amount in controversy, courts first look to the complaint. Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Ibarra*, 775 F.3d at 1197 (internal quotations omitted). "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Id.*

A defendant is only required to file a notice of removal that includes "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). However, if a plaintiff contests these allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* The preponderance of the evidence standard requires that "the defendant must provide evidence establishing that it is more likely than not that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (internal quotation marks omitted). The parties may submit evidence, including affidavits or declarations, or other "'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|----------|--------------------------|------|-----------------|
| Title | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

373, 377 (9th Cir. 1997)). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.*

"CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198. "As with other important areas of our law, evidence may be direct or circumstantial. In either event, a damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Id.* at 1199. "Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Id.*

"[T]he amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). Assumptions underlying a defendant's "chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" *Id.* (quoting *Ibarra* 775 F.3d at 1199). Assumptions "may be reasonable if [they are] founded on the allegations of the complaint." *Id.* at 925.

Under certain circumstances, attorney's fees may also be included in the amount in controversy. "[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds, then there is no question that future attorneys' fees are at stake in the litigation, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy." *Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 794 (9th Cir. 2018) (internal quotation marks, citation and brackets omitted). However, "a court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." *Id.* at 796. For example,

> [a] state may adopt the lodestar method for determining reasonable attorneys' fees under certain statutes, *see Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001), or (as in this case) not allow recovery of attorneys' fees for legal work on certain types of claims, *see Kirby v. Immoos Fire Prot., Inc.*, 53 Cal. 4th 1244, 1255 (2012) (stating that the attorneys' fees shifting provisions in California Labor Code §§ 218.5 and 1194 do not apply to legal work relating to meal and rest period claims). The court's determination regarding the amount of attorneys' fees at stake must take into account these statutory and contractual restrictions.

*Fritsch*, 899 F.3d at 796. Moreover, "the defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence" *Id.*

As a general rule of interpretation in connection with evaluating the propriety of a removal under CAFA, "Congress and the Supreme Court have instructed us to interpret CAFA's provisions under section 1332 broadly in favor of removal." *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015). "Congress intended CAFA to be interpreted expansively." *Ibarra*, 775 F.3d at 1197.

(2)    Waiver

Defendant maintains that Plaintiffs' have "waived their right to challenge the amount in controversy

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|---|---|---|---|
| Title | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

because their remand motion produces no evidence or argument to explain what is contested and why." Dkt. 22 at 7. *Ibarra* requires that "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." 775 F.3d at 1197 (quoting *Dart*, 574 U.S. at 88). *Ibarra* clarified that the "Supreme Court did not decide the procedure for each side to submit proof on remand, and here we need not decide the procedural issue, either." *Id.* at 1199-1200. *Ibarra* explained that, "[w]ithout deciding the procedure under which the parties should submit proof, the Supreme Court stated in *Dart* that '[i]n such a case [when the defendant's assertion of the amount in controversy is challenged], both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.'" 775 F.3d at 1199 n.4 (quoting *Dart*, 574 U.S. at 88).

Many district courts have applied the same procedure where a plaintiff challenges the amount-in-controversy requirement for CAFA jurisdiction: "[T]he burden of adducing evidence rests with defendant and . . . plaintiff need not proffer evidence until defendant has proffered sufficient proof to meet its initial burden." *Blevins v. Republic Refrigeration, Inc.*, No. 15-04019 MMM (MRWx), 2015 WL 12516693, at *5 (C.D. Cal. Sept. 25, 2015) (collecting cases).[4]

Under these standards, Plaintiffs' failure to provide evidentiary support for the Motion to Remand did not result in a waiver of their ability to contest whether the amount in controversy is at least $5 million. However, their failure to submit evidence affects their ability to seek to rebut the evidence proffered by Defendant as to the amount in controversy.

(3)   Competence and Admissibility of Rath Declaration

Plaintiffs argue that the Rath Declaration is not competent evidence and should not be given "any weight." Dkt. 26 at 4-5. Courts routinely accept declarations from human resources personnel and similar administrative managers as credible evidence to support CAFA removal. *See Alvarez v. Office Depot, Inc.*, No. CV 17-7220 PSG (AFMx), 2017 WL 5952181, at *2 (C.D. Cal. Nov. 30, 2017) (collecting cases). "A declaration from a person with knowledge of the relevant data is clearly an appropriate form of evidence." *Ruano v. Sears Roebuck & Co.*, No. CV 15-6060 PSG (FFMx), 2015 WL 6758130, at *4 (C.D. Cal. Nov. 5, 2015). "Neither *Ibarra* nor *Dart Cherokee* calls into question the long-

---

[4]  *See also, e.g., Akana v. Estee Lauder Inc.*, No. CV 19-00806 JAK (PLAx), 2019 WL 2225231, at *7 n.6 (C.D. Cal. May 23, 2019); *Amirian v. Umpqua Bank*, No. CV 17-7574 FMO (FFMx), 2018 WL 3655666, at *2 (C.D. Cal. July 31, 2018); *Ruano v. Sears Roebuck & Co.*, No. CV 15-6060 PSG (FFMx), 2015 WL 6758130, at *2 (C.D. Cal. Nov. 5, 2015); *Vitale v. Celadon Trucking Servs.*, No. CV 15-5193 PSG (GJSx), 2015 WL 5824721, at *2 (C.D. Cal. Oct. 2, 2015); *Buehler v. Saddle Creek Corp.*, No. CV 15-01361 SJO (KKx), 2015 WL 5618871, at *2 (C.D. Cal. Sept. 23, 2015); *Townsend v. Brinderson Corp.*, No. CV 14-5320 FMO (RZx), 2015 WL 3970172, at *3 (C.D. Cal. June 30, 2015); *Mejia v. DHL Express (USA), Inc.*, No. CV 15-890 GHK (JCx), 2015 WL 2452755, at *2 (C.D. Cal. May 21, 2015). Moreover, *Ritenour v. Carrington Mortgage Services LLC*, 228 F. Supp. 3d 1025 (C.D. Cal. 2017), does not speak to the contrary, because it found defendant's "detailed, reasonable calculations" were "sufficient to meet [defendant's] burden, especially since Plaintiffs offer no alternative amount-in-controversy or rebuttal evidence." *Id.* at 1031. *Ritenour* identified the absence of a rebuttal as supporting a sufficient showing and did not hold that the plaintiffs' failure waived any amount-in-controversy argument. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|---|---|---|---|
| Title | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

standing practice of accepting such declarations in lieu of the underlying records." *Amaya v. Consol. Container Co., LP*, No. 2:15-CV-03369-SVW-PLA, 2015 WL 4574909, at *2 (C.D. Cal. July 28, 2015). However, not every such declaration provides admissible, necessary evidence. For example, if the data offered is insufficient or lacks a sufficient foundation to support certain assumptions or calculations, the statements in a declaration may be insufficient to establish the amount in controversy. *Akana v. Estee Lauder Inc.*, No. LA CV-19-00806-JAK-PLAx, 2019 WL 2225231, at *5-6 (C.D. Cal. May 23, 2019).

(4)    Application

The Notice of Removal provided allegations as to the amount in controversy for a portion of the causes of action advanced by the Complaint. Dkt. 1 at 8-12. This included meal period premiums, rest period premiums, waiting time penalties and attorney's fees. *Id.* Based only on these claims, Defendant argued that the amount in controversy was $5,623,000, independent of the amounts at issue with respect to Plaintiffs' claims for unpaid overtime wages, unreimbursed business expenses or penalties for inaccurate wage statements and failure to keep requisite payroll records. *Id.* at 12. Defendant did not present evidence to support these allegations in the Notice of Removal. *See generally id.*

The Motion to Remand Opposition provides a broader showing as to the amount in controversy. It assesses the amount in controversy for the first six causes of action. *See* Dkt. 22 at 10-14. In support of Defendant's position, it presents the Rath Declaration. Dkt. 22-1. As noted, Rath is the "Administration, Contracts, Purchasing Senior Manager" of Defendant. *Id.* ¶ 1. Rath states that she "personally reviewed Defendant's business records, including records pertaining to Defendant's current and former employees who are in the putative class as defined by the Complaint." *Id.* ¶ 4.

"[W]hen a removing defendant makes specific factual allegations establishing jurisdiction and can support them . . . with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations[,] [t]hat kind of reasoning is not akin to conjecture, speculation, or star gazing." *Blevins*, 2015 WL 12516693, at *7 (quoting *Ibarra*, 775 F.3d at 1197). "Defendants need not 'research, state, and prove the plaintiff's claim for damages,' particularly since the question asks only what the plaintiff has 'put in controversy,' not how much the defendant should truly owe." *Id.* (quoting *Adams v. Toys 'R' Us - Delaware, Inc.*, No. 14-CV-05550-MEJ, 2015 WL 395214 (N.D. Cal. Jan. 29, 2015)).

(a)    First Cause of Action: Overtime Wages

The Complaint alleges that Defendant violated Cal. Lab. Code §§ 510 and 1198 and corresponding Industrial Welfare Commission ("IWC") Wage Orders by "intentionally and willfully fail[ing] to pay overtime wages owed to Plaintiffs and the other class members." Dkt. 1-1 ¶¶ 49-57. The Complaint alleges that California law requires payment of overtime wages at a rate of "time-and-one-half" for all hours worked in excess of eight hours in a day or 40 hours in a workweek. *Id.* ¶¶ 51-53. The Complaint alleges that, during the relevant time period, Plaintiffs and other class members "worked in excess of eight (8) hours in a day, and/or in excess of forty (40) hours) in a week" and that Defendant failed to provide the required compensation for the overtime work. *Id.* ¶¶ 53-57. The Complaint defines the proposed class as "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California." *Id.* ¶ 14. The Complaint was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|---|---|---|---|
| Title | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

filed on July 10, 2019. *Id.* at 2. The alleged class period would start on July 10, 2015. *Id.* ¶ 21.

In her declaration, Rath she states that she has "personally reviewed Defendant's business records, including records pertaining to Defendant's current and former employees who are in the putative class as defined by the Complaint." Dkt. 22-1 ¶ 4. She then declares that "Defendant employed around 790 hourly, non-exempt employees in California during the Class Period." *Id.* ¶ 5. She adds that, based on "payroll records Defendant keeps in the regular course of business," putative class members "worked an average of around 9.07 hours per business day during the Class Period." *Id.* ¶ 7. Rath next declares that the putative class members "worked an average of approximately 402 days each during the Class Period." *Id.* She then declares that, the "hourly rate of pay for putative class members varied year to year" and the "average hourly rate of pay throughout the Class Period was $21.08" for the putative class members. *Id.* ¶ 8.

Relying on this data, Defendant provides a calculation of a portion of what it claims to be the amount at issue. This calculation multiples the putative class size (790 members), the average overtime amount worked per day (1.07 hours), the average days worked during the class period (402 days), the average hourly rate of pay ($21.08 / hour), and the overtime rate alleged by the complaint (0.5). Dkt. 22 at 11. This results in a figure of $3,581,603.72.

Although Plaintiffs maintain that "Plaintiffs never allege that no overtime was paid," the Complaint alleges that "Defendants intentionally and willfully failed to pay overtime wages owed to Plaintiffs and the other class members," "Defendants failed to pay overtime wages to Plaintiffs and the other class members for all overtime hours worked," and Plaintiffs "were not receiving accurate overtime compensation for all overtime hours worked." Dkt. 1-1 ¶¶ 28, 39, 55. The Complaint does not narrow these allegations to state, for example, that only a partial overtime rate of pay was provided, that overtime wages were infrequently or sometimes paid, or that only full-time employees were deprived of overtime wages. Indeed, the Complaint does not distinguish full-time and part-time employees with respect to the claim of failure to pay overtime compensation.

It was reasonable for Defendant to rely on the broad allegations of the Complaint to determine the "maximum recovery plaintiff could reasonably recover." *See Arias* 936 F.3d at 925, 927. Here, that maximum recovery would be the total unpaid overtime compensation for putative class members during the relevant time period. This is stated above, and is based on payroll records from which the average time worked has been estimated. Nor did Defendant's reliance on the unqualified and broad allegations of the Complaint as to alleged failure to pay overtime wages generate a "speculative violation rate" (Dkt. 26 at 6). Therefore, Defendant has met its burden as to the calculation of $3,581,603.72 as the amount in controversy for the First Cause of Action.

     (b)  Second and Third Causes of Action: Rest and Meal Period Violations

The Complaint alleges that, for putative class members scheduled to work for six hours or less and who did not waive their meal periods, putative class members were required to work for more than five hours "without an uninterrupted meal period of not less than thirty (30) minutes and/or rest period." Dkt. 1-1 ¶ 63. For putative class members scheduled to work for longer than six hours, the Complaint alleges that putative class members were required to work for periods longer than five hours "without

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|----------|--------------------------|------|-----------------|
| Title    | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

an uninterrupted meal period of not less than thirty (30) minutes and/or rest period." *Id.* ¶ 64. The Complaint alleges that Defendant "intentionally and willfully required Plaintiffs and the other class members to work during meal periods and failed to compensate Plaintiffs and the other class members the full meal period premium for work performed during meal periods. *Id.* ¶ 65.

The Complaint alleges that Defendant "required Plaintiffs and other class members to work four (4) or more hours without authorizing or permitting a ten (10) minute rest period per each four (4) hour period worked." Dkt. 1-1 ¶ 73. The Complaint also alleges that Defendant required Plaintiffs and the putative class members to "work during rest periods and failed to pay Plaintiffs and the other class members the full rest period premium for work performed during rest periods." *Id.* ¶ 74. The Complaint alleges that putative class members are entitled to recover "one additional hour of pay at the employees' regular hourly rate of compensation for each work day that the rest period was not provided." *Id.* ¶ 77.

Rath declares that 790 putative class members were employed during the relevant time period and that, on average, these putative class members worked for 402 days. Dkt. 22-1 ¶¶ 5, 7. Based on the allegation that such meal period violations entitle putative class members "one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided" and the average hourly rate stated of $21.08 (Dkt. 22-1 ¶ 8), Defendant calculated an amount in controversy for the second cause of action as $6,694,586.40. Dkt. 22 at 11 (790 putative class members x 402 average days worked x $21.08 meal period premium = $6,694,586.40). This calculation relies on a 100% violation rate, i.e., every putative class member experienced a meal period violation for every day worked.

Similarly, based on 790 putative class members, 402 average days worked, and a $21.08 average hourly wage, Defendant calculates an amount in controversy for the third cause of action as the same amount, i.e., $6,694,586.40. Dkt. 22 at 12. This calculation relies on the same data as the meal period violations and relies on the same 100% violation rate, i.e., every putative class member experienced one rest period violation for every day worked.

Reasonable assumptions as to violation rates depend upon the allegations of the complaint. Where plaintiffs have alleged "consistent," "systematic," or "uniform" policies depriving workers of meal or rest periods, such allegations can support a 100% violation rate. *See Archuleta v. Avcorp Composite Fabrication, Inc.*, No. CV 18-8106 PSG (FFMx), 2018 WL 6382049, at *4 (C.D. Cal. Dec. 6, 2018) (collecting cases); *Sanchez v. Russell Sigler, Inc.*, No. CV 15-01350-AB (PLAx), 2015 WL 12765359, at *2 (C.D. Cal. Apr. 28, 2015) (approving a 100% violation rate where the Complaint alleged "universal deprivation of meal and rest periods"). However, where a complaint alleges that meal and rest periods were "regularly" or "often" denied, courts have approved reasonable assumptions for violation rates between 20% and 50%. *See Blevins*, 2015 WL 12516693, at *9 (collecting cases). Such assumed violation rates are reasonable particularly when a plaintiff "does not provide an alternate estimate." *See Blevins*, 2015 WL 12516693, at *9.

Unlike the data presented for overtime violations, where Defendant offered evidence supporting the average overtime hours of 1.07 hours per work day for putative class members, the data as to meal and rest breaks is not specific as to the number of average meal and rest period violations or a sample data set from which to extrapolate. The Complaint alleges that Defendant "engaged in a pattern and practice of wage abuse," which "involved, *inter alia*, failing to pay them for all regular and/or overtime

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|----------|-------------------------|------|-----------------|
| Title | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

wages earned and for missed meal periods and rest breaks in violation of California law." Dkt. 1-1 ¶ 27. Therefore, based on this "pattern and practice" allegation, applying a reasonable assumption for a violation rate is appropriate, particularly in light of Plaintiffs' failure to offer an alternative estimate. *See Arias*, 936 F.3d at 927 (defendant's assumption of one missed rest period per week was "plausible" in light of the complaint's allegation that the defendants "routinely" failed to pay for missed rest and meal breaks); *Blevins*, 2015 WL 12516693, at *9.

A 25% violation rate is a reasonable and conservative assumption where the Complaint alleges a pattern or practice of wage abuse and fails to allege universal or uniform deprivations of meal and rest periods. Applying such a violation rate results in a total amount in controversy for the Second and Third Causes of Action of $3,347,293.

(c)     Remaining Causes of Action and Attorney's Fees

Because the figures for the amounts in controversy for the first three causes of action total $6,928,896.92, it is unnecessary to calculate the amounts in controversy as to the remaining causes of action. However, in the interest of completeness, they are evaluated.

(i)     Fourth Cause of Action

The Complaint alleges that Defendant "failed to pay minimum wage to Plaintiffs and the other class members as required." Dkt. 1-1 ¶ 80. The Complaint alleges that the putative class is "entitled to recover the unpaid balance of their minimum wage compensation." *Id.* ¶ 81. The Complaint also alleges that the putative class is entitled to recover "a penalty of $100.00 for the initial failure to timely pay each employee minimum wages, and $250.00 for each subsequent failure to pay each employee minimum wages." *Id.* ¶ 82.

Defendant claims that it is "unclear from the Complaint how many hours of work Plaintiffs allege each putative class member is owed." Dkt. 22 at 12. The Complaint alleges that Defendant's "pattern and practice of wage abuse" includes a failure to pay putative class members "all regular and/or overtime wages earned." Dkt. 1-1 ¶ 27. Defendant bases its amount in controversy calculation for the fourth cause of action on Plaintiffs' attempt to recover, "at the very least", minimum wages spent working through meal periods. Dkt. 22 at 12. Defendant contends that this totals $3,347,293.20. It calculated this figure by multiplying 790 putative class members, by an average of 402 days worked, by an average hourly rate of pay of $21.08 per hour, and a meal period time of 0.5 hours. *Id.* at 12-13. Defendant did not explain clearly why it used an hourly rate of pay of $21.08 as the minimum wage rate, instead of the $10.00 rate cited as "California's minimum wage at the start of the limitations period" or the $17.00 rate cited as the "lowest pay rate outlined in the CBA." Dkt. 22 at 8 & n.1. Defendant's calculation also assumes a 100% violation rate, i.e., that putative class members were not paid minimum wage for working through a meal period for every day of work.

There are several problems with this calculation. *First*, it appears to overlap with the prior ones as to the claims for unpaid wages. Therefore, it is double-counting. *Second*, it applies a 100% violation rate, when a 25% violation rate is a reasonable assumption based on the Complaint's allegations that the failure to pay wages was a "pattern and practice." Dkt. 1-1 ¶ 27. *Third*, it applies an average hourly rate of pay of $21.08 rather than the $10 minimum wage. Putting aside double-counting, using the same

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|---|---|---|---|
| Title | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

formula identified by Defendant, but using a 25% violation rate and a $10.00 minimum wage would result in $396,975 (790 putative class members x 402 average days worked x $10.00 wage rate at a 25% violation rate, and a half hour meal period). However, because this amount appears to constitute double-counting, it is not included in the jurisdictional calculation.

Defendant also presents a calculation for statutory penalties with respect to the Fourth Cause of Action. Dkt. 22 at 13. Defendant assumes that putative class members "worked 7 days a week" and were "paid on a biweekly basis." *Id.* Given that the Rath Declaration does not state that the putative class members worked seven days a week, that is discusses the average hours worked per "business day" (Dkt. 22-1 ¶ 7), and the lack of clarity as to whether biweekly pay periods is an assumption (Dkt. 22 at 13), insufficient evidentiary support has been presented to support including statutory penalties in the calculation of the amount in controversy. Therefore, the amount proffered by Defendant is not included in the calculation of the amount in controversy.

(ii)   <u>Fifth Cause of Action</u>

The Complaint alleges that Defendant "intentionally and willfully failed to pay Plaintiffs and the other class members who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ." Dkt. 1-1 ¶ 86. The Complaint alleges that, in the event of such a failure, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action is commenced," but this period shall not exceed thirty days. *Id.* ¶ 88. The Complaint seeks to recover the "statutory penalty wages for each day they were not paid," up to the thirty day maximum. *Id.* ¶ 89.

Actions for final wages not paid as required by Cal. Lab. Code §§ 201, 203, and 203 are subject to a three-year statute of limitations. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1395 (2010); *see also* Cal. Code Civ. Proc. § 338(a); *Hassan v. Praxair, Inc.*, No. LA CV 18-02811 JAK (AFMx), 2019 WL 3064435, at *5 (C.D. Cal. Mar. 4, 2019). No evidence has been offered as to why there should be any tolling of the limitations period. Therefore, the amount in controversy is limited to the period starting on July 10, 2016.

The Rath Declaration states that "approximately 484 employees separated from their employment with Defendant between July 10, 2016, and the present." Dkt. 22-1 ¶ 6. This finding was based on "data related to the dates putative class members started and ended their employment." *Id.* Defendant's calculation for the amount in controversy for the Fifth Cause of Action assumes that Defendant failed to pay final wages to all 484 separated employees for the maximum 30 days. Dkt. 22 at 13. Unlike the data presented as to overtime hours or the allegations as to patterns or practices for other wage abuses, Defendant has not adequately shown why it is appropriate to assume a universal maximum penalty rate for payment of final wages. *See Beck v. Saint-Gobain Containers*,   2016 WL 4769716, at *10 (C.D. Cal. Sept. 12, 2016); *Vasserman v. Henry Mayo Newhall Memorial Hospital*, 65 F. Supp. 3d 932, 978, 979 (C.D. Cal. 2014) (Morrow, J.). The Rath Declaration does not provide data as to the average delay, if any, in payment of final wages following separation. Absent further evidentiary support or more universal and categorical allegations in the Complaint, no reasonable calculation can be reached as to the amount in controversy for the Fifth Cause of Action for waiting time penalties.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|---|---|---|---|
| Title | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

(iii)    Sixth Cause of Action

The Complaint alleges that Defendant "intentionally and willfully failed to pay Plaintiffs and the other class members all wages due to them, within any time period permissible under California Labor Code section 204." Dkt. 1-1 ¶ 94. The Complaint alleges that the putative class is entitled to recover "all remedies available for violations of California Labor Code section 204." *Id.* ¶ 95.

Defendant states that the statutory penalties for § 204 violations include $100 for the initial violation and $200 for each subsequent one. Dkt. 22 at 14 (citing California Labor Code § 210). Defendant then calculates the amount in controversy for the Sixth Cause of Action by assuming that the 402 average work days "roughly equates to 28 biweekly pay periods," which leads to one initial penalty of $100 and 27 subsequent $200 penalties for each of the 790 putative class members. *Id.* However, as noted earlier, Defendant did not present sufficient evidentiary support for the claim that 28 biweekly pay periods were the average for putative class members; the Rath Declaration does not include such a statistic. Defendant has calculated this average of 28 biweekly pay periods by dividing 402 average work days by seven-day work weeks and then multiplying that amount by two to calculate the number of biweekly pay periods. *See* Dkt. 22 at 13.

There are deficiencies with this analysis. It is unclear how Defendant reached the conclusion that putative class members worked a seven-day work week. The Rath Declaration appears to assume an average five-day work week. Thus, it mentions "business days" and employees who "worked an average of approximately 402 days each during the Class Period." Dkt. 22-1 ¶ 7. Therefore, and in light of the lack of support for the assumed violation rate, Defendant's arguments as to the amount in controversy for the Sixth Cause of Action are insufficient and are not applied in calculating the total amount in controversy.

(iv)    Seventh, Eight, Ninth and Tenth Causes of Action

Defendant does not identify an amount in controversy for the Seventh through Tenth Causes of Action. Dkt. 22 at 14.

(v)    Attorney's Fees

The amount in controversy includes "attorneys' fees awarded under fee-shifting statutes or contract." *Fritsch v. Swift Transportation Co.*, 899 F.3d 785, 793 (9th Cir. 2018). "[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds, 'then there is no question that future [attorneys' fees] are at stake in the litigation.'" *Id.* (quoting *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018)). However, *Fritsch* rejected the principle that 25 percent of an alleged recovery should be per se appropriate. *Id.* at 796. *Fritsch* noted that the possible recovery of attorney's fees depends on the type of claim. *Id.* For example, the "fee shifting provisions" of Cal. Lab. Code §§ 218.5 and 1194 "do not apply to legal work relating to meal and rest period claims." *Id.* (citing *Kirby v. Immoos Fire Prot., Inc.*, 53 Cal. 4th 1244, 1255 (2012)).

Cal. Lab. Code § 1194 permits recovery of "reasonable attorney's fees" and "costs of suit" for actions brought to recover the unpaid balance of minimum wage or overtime compensation. Cal. Lab. Code § 218.5 permits recovery of "attorney's fees and costs to the prevailing party" in an action brought for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|----------|--------------------------|------|-----------------|
| Title    | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

"nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions."

Although these statutes permit the recovery of attorneys' fees under certain circumstances, Defendant did not expressly include attorney's fees as part of its calculation of the amount in controversy. *See* Dkt. 22 at 14 ("Again, this does not consider potential damages for Plaintiffs' four remaining claims or potential attorneys' fees, which are authorized by statutes underlying [certain causes of action]."). Even if it were assumed that Defendant had presented this issue,[5] "simply ask[ing] the Court to adopt the 25 percent benchmark" fails to meet the burden necessary to add such an amount to the calculation. *Zamarripa v. Superior Talent Resources, Inc.*, No. SA CV 19-0982-DOC (MAAx), 2019 WL 3246502, at *6 (C.D. Cal. July 19, 2019); *see also Akana*, 2019 WL 2225231, at *8 (refusing to permit the "conclusory assertion" that a 25% attorneys' fee recovery would be a reasonable estimate).

(5)     Conclusion

For the foregoing reasons, the First Cause of Action places $3,581,603.72 in controversy. The Second and Third Causes of Action together place $3,347,293.20 in controversy. These two amounts total more than $5,000,000. Defendant has met its burden to demonstrate the amount in controversy for certain causes of action. This amount is sufficient to support the amount in controversy required by 28 U.S.C. § 1332(d). Therefore, the burden shifted to Plaintiff to present evidence to support a lower amount. As stated earlier, Plaintiff has foregone the opportunity to seek to do so.

C.     Conclusion

For the reasons stated above, the Motion to Remand is **DENIED**.


III.     **Motion to Dismiss**

A.     Motion for Leave

1.     Background

The Motion to Dismiss was filed on September 12, 2019, and initially scheduled to be heard on January 27, 2020. Dkt. 10. On that day, on the Court's own motion, the Motion to Dismiss was continued to February 10, 2020. Dkt. 11. The order continuing the hearing stated that "Counsel shall refer to the Court's standing Order with respect to the briefing schedule for motions. *Id.* The Standing Order issued on September 6, 2019. Dkt. 6. The Standing Order provides a briefing schedule different than the one in the Local Rules, and provides: "Please read this section carefully. This Court's schedule for briefing motions differs significantly from the briefing schedule set by the Local Rules." Dkt. 6 at 8. Pursuant to the Standing Order's briefing schedule, an opposition to the Motion to Dismiss was due on or before October 3, 2019.

No timely opposition was filed by that date. On October 10, 2019, Defendant filed a notice of non-

---

[5] *See* Dkt. 22 at 10 n.3 ("Therefore, because attorneys' fees 'are at stake in the litigation,' they 'should be included in the amount in controversy.'" (quoting *Fritsch*, 899 F.3d at 788)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|---|---|---|---|
| Title | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

opposition. On October 11, 2019, Plaintiffs filed a response, which cited a calendaring error as the cause for the missed deadline. Dkt. 15. On October 15, 2019, Defendant filed a reply to its notice of non-opposition. Dkt. 16. On October 25, 2019, Plaintiffs filed the Motion for Leave, which seeks leave to file a late opposition based on excusable neglect. Dkt. 21. The Motion for Leave maintains that there was no prejudice to Defendant, the reason for the delay was excusable, and there was no bad faith. *See id.* Defendant filed an opposition to the Motion for Leave, which cited Plaintiffs' Counsel's previous failure to abide by this Court's Standing Order. *See* Dkt. 22 at 6.

2. Analysis

The Motion for Leave presents a sufficient showing of excusable neglect to permit filing of the Motion to Dismiss Opposition. Whether there is excusable neglect depends on a consideration of four factors: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. U.S. Postal Service*, 231 F.3d 1220, 1223-24 (9th Cir. 2000) (citing *Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 395 (1993)).

The prejudice, delay, and impact on Defendant and these proceedings were minimal. Instead of an opposition being filed on October 3, 2019, it was filed on October 25, 2019. Given a hearing date of February 10, 2020, any prejudice imposed by such a short delay is negligible. Plaintiffs have presented a sufficient showing as to good faith efforts to comply with the briefing schedule and filed a prompt response to the notice of non-opposition. However, the reason for delay weighs against granting leave to file the opposition. The order that continued the hearing on the Motion to Dismiss instructed the parties to "refer to the Court's Standing Order with respect to the briefing schedule." Dkt. 11. The Standing Order specifically notes that the schedule for briefing motions "differs significantly from the briefing schedule set by the Local Rules." Dkt. 6 at 8. And, although Plaintiffs' Counsel states that a calendaring error occurred in which the terms of the Standing Order was not applied, Plaintiffs' Counsel previously committed the same calendaring error with regard to the Standing Order in a previous case before this Court. *See* Dkt. 21 at 2, *Silva v. AvalonBay Communities, Inc.*, No. 2:15-cv-4157 JAK (PLAx) (C.D. Cal. July 15, 2015).

Even where a reason for delay is "weak" and counsel shows a "lack of regard for his client's interests and the court's docket," such conduct is only "negligence and carelessness," not "deviousness or willfulness." Based on a consideration of the matters presented by the Motion for Leave, sufficient good cause has been shown to find excusable neglect in Plaintiffs' failure to file a timely opposition to the Motion to Dismiss. Therefore, the Motion for Leave is **GRANTED**. Exhibit D to the Haber Declaration (Dkt. 21-2 at 7-30) is accepted as the opposition to the Motion to Dismiss.

In addition to this calendaring error, it appears that Plaintiffs' Counsel has not fully complied with Local Rule 7-3 and the Standing Order to discuss thoroughly the substance of the Motion to Remand before filing it. *See* Dkt. 22 at 15-16 (citing Dkt. 22-2). Although Defendant was not prejudiced by this non-compliance, future failures by Plaintiffs' counsel to comply with Local Rules or the Standing Order as to scheduling or meet-and-confer obligations will not be excused or may result in the imposition of sanctions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|---|---|---|---|
| Title | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

B.      Request for Judicial Notice

Defendant filed a Request for Judicial Notice in Support of Defendant's Motion to Dismiss Plaintiffs' Complaint (the "Request for Judicial Notice"). Dkt. 10-5. Defendant requests judicial notice of the "Collective Bargaining Agreement between International Brotherhood of Electrical Workers, Local 11, and Kinkisharyo International, L.L.C. and Altech Services, Inc., dated March 22, 2016 through P3010 Project Completion" (the "CBA"), which is attached as Exhibit A to the Declaration of Philip Shecter. Dkt. 10-5 at 2 (citing Dkt. 10-3).

Fed. R. Evid. 201(b) provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." More specifically, a court "may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (quoting *Mack v. South Bay Beer Distrib.*, 789 F.2d 1279, 1282 (9th Cir. 1986)). Such matters of public record include "documents on file in federal or state courts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

A motion to dismiss is generally "limited to the [contents of] the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Cs., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). In considering materials incorporated into the complaint, the court may review the full text of a document even if the complaint quotes only part of it. *Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir. 1997). A court may also consider "evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (discussing a provision in a settlement agreement releasing parties from liability).

Plaintiffs do not object to the Request for Judicial Notice. However, courts have adopted different positions on whether to take judicial notice of CBAs in considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) when the complaint does not incorporate the CBA by reference. *Compare Lefevre v. Pacific Bell Directory*, No. 14-cv-03803-WHO, 2014 WL 5810530, at *2 (N.D. Cal. Nov. 7, 2014) (denying judicial notice for motion to dismiss); *Schroeder v. Envoy Air, Inc.*, No. 16-04911-MWF-KS, 2017 WL 10525816 (C.D. Cal. Feb. 6, 2017) (same) *with Sarmiento v. Sealy, Inc.*, 367 F. Supp. 3d 1131, 1142 (N.D. Cal. 2019) (granting judicial notice as to CBA for preemption issues on judgment on the pleadings); *Hernandez v. Sysco Corp.*, No. 16-CV-06723-JSC, 2017 WL 1540652, at *2 (N.D. Cal. Apr. 28, 2017) (same); *Alcala v. Republic Bag, Inc.*, No. ED CV-18-272 JGB SHKx, 2018 WL 1633588, at *1 (C.D. Cal. Apr. 3, 2018) (granting judicial notice for motion to remand).

In light of Plaintiffs' non-opposition to the Request for Judicial Notice and the practice of taking judicial notice of collective bargaining agreements for purposes of a motion to dismiss in labor law cases, the Request for Judicial Notice is **GRANTED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|---|---|---|---|
| Title | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

C.  Factual Background

1.  Allegations in the Complaint

As stated above, the Complaint advances ten causes of action: (i) violation of California Labor Code §§ 510 and 1198 for unpaid overtime, (ii) violation of California Labor Code §§ 226.7 and 512(a) for unpaid meal period premiums, (iii) violation of California Labor Code § 226.7 for unpaid rest period premiums, (iv) violation of California Labor Code §§ 1194, 1197, and 1197.1 for unpaid minimum wages, (v) violation of California Labor Code §§ 201 and 202 for final wages not timely paid, (vi) violation of California Labor Code § 204 for wages not timely paid during employment, (vii) violation of California Labor Code § 226(a) for non-compliant wage statements, (viii) violation of California Labor Code § 1174(d) for failure to keep requisite payroll records, (ix) violation of California Labor Code §§ 2800 and 2802 for unreimbursed business expenses, and (x) violation of California Business and Professions Code § 17200. Dkt. 1-1 at 2.

The Complaint alleges that Loaiza was employed from "approximately January 2017 to approximately March 2018." Dkt. 1-1 ¶ 19. The Complaint alleges that Landaverde was employed from 'approximately January 2017 to approximately March 2018." *Id.* ¶ 20.

The Complaint alleges that Defendants "engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees within the State of California." Dkt. 1-1 ¶ 27. "This pattern and practice involved, *inter alia*, failing to pay them for all regular and/or overtime wages earned and for missed meal periods and rest breaks in violation of California law." *Id.*

2.  Relevant Provisions of the CBA

A collective bargaining agreement is attached as Exhibit A to the Declaration of Philip Shecter. Dkt. 10-3. The agreement (the "CBA") is titled "International Brothers of Electrical Workers, Local 11 and Kinkisharyo International LLC & Altech Services, Inc. March 22, 2016 through P3010 Project Completion." Dkt. 10-3.

Article 7, Section 2(e) provides for arbitration of complaints related to "meal and rest periods":

> Any complaint arising in connection with the application or interpretation of this Article, including but not limited to claims regarding alleged missed meal and rest periods and/or alleged payments for missed meal and rest periods shall be exclusively subject to the grievance and arbitration procedure set forth in this Agreement and shall not be subject to resolution by way of court, a jury trial, or an administrative proceeding, regardless of whether the claim alleges a violation of this Agreement or of a statutory, regulatory, and/or common law duty or requirement. The Arbitrator may award remedies under this Agreement and under applicable State and Federal laws. Any claims asserted under this Section shall be subject to the applicable statutory time limitations provided for under the Labor Code.

Dkt. 10-3 at 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|----------|--------------------------|------|-----------------|
| Title | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

Article 7, Section 3 provides for arbitration of disputes related to methods of payment:

> The Employer shall have a regular designated payday for all Employees, which may be changed with two weeks' notice to the Union so long as the Employer does not change the pay period to less than two pay periods a month. Should the Employer wish to change the pay period to less than two pay periods a month, the Employer may only do so with two weeks' notice to, and agreement by, the Union. The parties agree that in disputes regarding whether an Employee is paid untimely or inaccurately under applicable state or federal law (i.e. minimum wage, overtime, failure to pay wages) the sole and exclusive remedy shall be the binding grievance and arbitration procedure set forth in Article 10. In the event that the parties cannot resolve the matter informally under that procedure, such dispute shall be submitted to binding arbitration. An arbitrator shall have the power to award an appropriate remedy, including waiting time penalties, other monetary awards and injunctive relief.

Dkt. 10-3 at 13.

Article 10 provides "grievance and arbitration" procedures. Dkt. 10-3 at 17-18. In particular, Article 10 defines "grievance":

> For the purpose of this Agreement, the term, "grievance" is defined as a dispute between the Employer and the Union on behalf of any Employee (other than a probationary Employee) regarding the interpretation of any express provision of the Agreement, or any question of fact arising out of any alleged violation of any express provision of this Agreement which is not otherwise excluded from this grievance procedure.

Dkt. 10-3 at 17.

Article 10 then details a grievance procedure. Dkt. 10-3 at 17-18.

    D.    Analysis

        1.    <u>Failure to Grieve</u>

            a)    Legal Standards

The right of an employee to a judicial forum for statutory claims can be waived by a union's collective bargaining agreement where such a waiver is "clear and unmistakable." *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80-81 (1998); *see also Powell v. Anheuser-Busch Inc.*, 457 Fed. Appx. 679, 680 (9th Cir. 2011). Provisions that attempt "to provide a blanket waiver to all federal and state causes of action[] have been routinely rejected by both the U.S. Supreme Court and Ninth Circuit." *Smith v. Serv. Employees Int'l Union, Local 521*, No. 16-CV-02547-LHK, 2016 WL 4268713, at *8 (N.D. Cal. Aug. 14, 2016) (collecting cases). Recent, unpublished Ninth Circuit cases cite to the consensus among circuit courts that a CBA must identify specific statutes to provide a clear and unmistakable waiver. *Wawock v. CSI Elec. Contractors, Inc.*, 649 F. App'x 556, 558 (9th Cir. 2016) (citing *Ibarra v. UPS*, 695 F.3d 354, 356-60 (5th Cir. 2012)); *see also Powell*, 457 Fed. Appx. at 680.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|---|---|---|---|
| Title | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

*Smith* held that a blanket waiver was not clear and unmistakable where the employer agreed to "comply with all applicable federal, state and local laws and regulations, including, but not limited to, provisions of the California Labor Code, Industrial Welfare Commission's Orders and Fair Labor Standards Act" and the employees "agree[d] to resolve any wage and hour claims . . . arising from . . . these other federal, state and local laws through the grievance and arbitration procedure." *Id.* at 9.

In *Martinez v. J. Fletcher Creamer & Son, Inc.*, No. CV 10-0968 PSG (FMOx), 2010 WL 3359372, at *4 (C.D. Cal. Aug. 13, 2010), the court addressed a "narrow" question: "[C]an a collective bargaining agreement that does not mention any of the statutes at issue constitute a "clear and unmistakable" waiver of an employee's right to sue in a judicial forum under those statutes?" *Id. Martinez* held that it was "compelled to answer in the negative." *Id.* It was "undisputed" that the CBA in *Martinez* did "not directly refer to any of the relevant statutes," notwithstanding that the relevant CBA provision provided that "[a]ny dispute or grievance arising from this Wage Order shall be processed under and in accordance with [the grievance procedure]" and that the grievance procedure "shall be the exclusive method for resolving all alleged violations o[f] this Wage Order . . . ." *Id.* at *1. Because there was no reference to the specific statutes at issue, *Martinez* declined to find a clear and unmistakable waiver. Other district courts have recognized an apparent "agreement that a statute must specifically be mentioned in a CBA for it to even approach *Wright*'s clear and unmistakable standard." *Wawock v. CSI Electric Contractors, Inc.*, No. 2:14-cv-06012 SVW (MANx), 2014 WL 5420900 (C.D. Cal. Oct. 21, 2014) (quoting *Batten v. SSI Servs., Inc.*, 185 F.3d 625, 631 (6th Cir. 1999), *aff'd* 649 Fed. Appx. 556 (9th Cir. 2016); *see also Preddy v. Davidson Hotel Co. LLC*, No. 18-CV-07730 DMR, 2019 WL 3254237, at *4 (N.D. Cal. July 19, 2019); *Hoko v. Transit Am. Servs.*, No. 14-CV-01327 LHK, 2014 WL 3963033, at *6 (N.D. Cal. Aug. 13, 2014).

In light of these decisions, Defendant's reliance on *Sanchez v. Securitas Sec. Servs. USA, Inc.*, No. 2:17-CV-08462-SVW-E, 2018 WL 5861258, at *2 (C.D. Cal. July 17, 2018), is unpersuasive. Although *Sanchez* states that the CBA language there was "almost identical" to CBA language in *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 256 (2009), which referred to claims made pursuant to Title VII, the ADA and the ADEA, the CBA in *Sanchez* did not identify particular statutes and instead identified "statutory claims" related to payment of wages, rest periods and similar claims. *See* 2018 WL 5861258 at *1-2, *3.

Courts vary in the proper method by which to raise a plaintiff's purported failure to exhaust remedies under a CBA. They include motions for judgment on the pleadings, motions for summary judgment and motions to dismiss. *See, e.g., Preddy*, 2019 WL 3254237, at *4 (motion for judgment on the pleadings); *Martinez*, 2010 WL 3359372 (motion for summary judgment); *Sanchez*, 2018 WL 5861258 (motion for summary judgment); *Smith*, 2016 WL 4268713 (motion to dismiss); *Partida*, 2019 WL 1601387 (motion to dismiss).

        b)     Application

Both Article 7, Section 2(e) and Article 7, Section 3 -- governing meal and rest periods and method of payment, respectively -- direct employees to the grievance and arbitration procedure in Article 10. Dkt. 10-3 at 12-13.

       Any complaint arising in connection with the application or interpretation of this Article,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|----------|--------------------------|------|-----------------|
| Title | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

> including but not limited to claims regarding alleged missed meal and rest periods and/or alleged payments for missed meal and rest periods shall be exclusively subject to the grievance and arbitration procedure set forth in this Agreement and shall not be subject to resolution by way of court, a jury trial, or an administrative proceeding, regardless of whether the claim alleges a violation of this Agreement or of a statutory, regulatory, and/or common law duty or requirement.

Dkt. 10-3 at 12.

> The parties agree that in disputes regarding whether an Employee is paid untimely or inaccurately under applicable state or federal law (i.e. minimum wage, overtime, failure to pay wages) the sole and exclusive remedy shall be the binding grievance and arbitration procedure set forth in Article 10. In the event that the parties cannot resolve the matter informally under that procedure, such dispute shall be submitted to binding arbitration. An arbitrator shall have the power to award an appropriate remedy, including waiting time penalties, other monetary awards and injunctive relief.

Dkt. 10-3 at 13.

Article 10 provides the procedures for "grievance and arbitration." *See* Dkt. 10-3 at 17-18. Article 10, Section 1(b) states the procedure that must be followed for "any grievance" that "arise[s] under and during the term" of the CBA. *Id.* at 18. However, Article 10 defines "grievance" as a "dispute" between the employer and the union on behalf of any employee regarding either (i) "the interpretation of any express provision" of the CBA or (ii) "any question of fact arising out of any alleged violation of any express provision of [the CBA], which is not otherwise excluded from this grievance procedure." *Id.* at 17. This definition of "grievance" makes no mention of state law or federal law claims.

There are two related reasons that preclude a finding of clear and unmistakable waiver. *First*, Article 7, Sections 2(e) and 3 do not identify the statutes as to which employees are waiving their rights. Section 2(e) mentions violations of "a statutory, regulatory, and/or common law duty or requirement." Dkt. 10-3 at 12. Section 3 mentions disputes related to an employee being "paid untimely or inaccurately under applicable state or federal law (i.e., minimum wage, overtime, failure to pay wages)." *Id.* at 13. These provisions do not state that employees are waiving their right to a judicial forum for resolution of claims under the California Labor Code or IWC Wage Orders, or the provisions of them that are relevant here.

*Second*, these provisions direct employees to the "grievance and arbitration procedure" of Article 10. However, as discussed above, the definition of "grievance" under Article 10 does not mention any state or federal statutes. The definition of "grievance" also states that it includes a dispute over a question of fact arising out of an alleged violation of an express provision of the CBA "which is not otherwise excluded from this grievance procedure." *Id.* at 17. It remains unclear what would otherwise be excluded from the grievance procedure. However, this language does not support a showing of a waiver of statutory rights given that the definition of grievance does not mention state or federal law.

An employee seeking to understand whether a meal and rest period violation or overtime violation under state law is to be arbitrated is presented with two articles of the CBA that are not in complete harmony. Article 7, Sections 2(e) and 3 refer to claims arising under statutes or state or federal law

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|---|---|---|---|
| Title | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

without identifying particular statutes. Then, it directs that such claims under state or federal law are subject to Article 10. Article 10 does not mention such claims and limits its procedure to "grievance[s]." Article 10 defines "grievance" without mentioning state or federal law, but only "a dispute" between employer and employee "regarding the interpretation of any express provision" of the CBA or "any question of fact arising out of any alleged violation." Given the failure to identify particular statutes and the lack of clarity in the relationship between Article 7 and Article 10, there is not a clear and unmistakable waiver of state and federal statutory rights.

For these reasons, the Motion to Dismiss is **DENIED** based on the claim that Plaintiffs failed to exhaust the grievance and arbitration procedures in the CBA for those claims that are not preempted for the reasons stated in the following section.

      2.    <u>LMRA Preemption</u>

          a)    Legal Standards

As noted, the Ninth Circuit applies a two-step inquiry to determine whether there is preemption under § 301. *Curtis*, 913 F.3d at 1152. *First*, if the "asserted cause of action involves a 'right [that] exists solely as a result of the CBA,'" then "the claim is preempted, and [the] analysis ends there." *Id.* (alteration in original) (quoting *Kobold*, 832 F.3d at 1032; *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007)). "The essential inquiry is this: Does the claim seek 'purely to vindicate a right or duty created by the CBA itself[?]'" *Id.* (alteration in original) (quoting *Schurke*, 898 F.3d at 921).

*Second*, if a "plaintiff's state law right is substantially dependent on analysis" of the CBA, then the claim is preempted. *Curtis*, 913 F.3d at 1153 (quoting *Kobold*, 832 F.3d at 1033). This second step "turns on whether the claim cannot be resolved by simply 'look[ing] to' versus 'interpreting' the CBA." *Id.* (quoting *Kobold*, 832 F.3d at 1033). In this context, "interpretation" is "construed narrowly" and a state claim may "avoid preemption if it does not raise questions about the scope, meaning, or application of the CBA." *Id.* "[C]laims are only preempted to the extent there is an active dispute over 'the meaning of contract terms.'" *Id.* (quoting *Schurke*, 898 F.3d at 921).

          b)    Application

             (1)    <u>First Cause of Action</u>

As discussed above, Cal. Lab. Code § 510 does not apply to qualifying CBAs under Cal. Lab. Code § 514. *See Curtis*, 913 F.3d at 1154. The Motion to Dismiss and Motion to Remand each relied on a sufficient showing that the CBA is a qualifying one under Section 514 and Plaintiffs failed to contest whether the CBA was a qualifying CBA under Section 514. The analysis applied above, as to the Motion to Remand and LMRA preemption for removal, also applies here. Because Section 510 does not apply to employees covered by the CBA, the right to overtime exists solely because of the CBA. Therefore, LMRA preemption is appropriate.

Although leave to amend should be freely given, a district court may dismiss a cause of action without leave to amend where amendment would be futile. *See Cervantes v. Countrywide Home Loans*, Inc., 656 F.3d 1034, 1041 (9th Cir. 2011). Because Plaintiffs' claims under Cal. Lab. Code § 510 are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|----------|--------------------------|------|-----------------|
| Title | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

preempted by the LMRA, amendment of the First Cause of Action would be futile. *See Gillette v. Stater Bros. Markets*, No. EDCV191292JVSKKX, 2019 WL 8017735, at *7 (C.D. Cal. Sept. 23, 2019) (dismissing, without leave to amend, a cause of action based on violations of Cal. Lab. Code § 510 where it was preempted by the LMRA); *Coleman v. S. Wine & Spirits of California, Inc.*, No. 11-501 SC, 2011 WL 3359743, at *5 (N.D. Cal. Aug. 2, 2011) ("preemption under section 301 of the LMRA is a basis for dismissal with prejudice."). Accordingly, granting leave to amend would be unwarranted.

For these reasons, the Motion to Dismiss is **GRANTED** as to the First Cause of Action, which is **DISMISSED WITH PREJUDICE**.

(2)     <u>Second and Third Causes of Action</u>

Defendant maintains that Plaintiffs' claims for meal and rest period claims "cannot be adjudicated without interpretation of numerous CBA provisions governing Plaintiffs' employment." Dkt. 10-1 at 12. Defendant also argues that, because the manner of waiver of these periods differs under the CBA and California law, the state-law claims for meal and rest periods will substantially depend on interpreting these CBA provisions. *Id.* at 12-13. For example, under the CBA, an employee may voluntarily waive a meal period and "will be presumed to have done so if the meal period is not taken." Dkt. 10-3 at 12. An employee is authorized and "must take" a rest period for every four hours worked. *Id.* Moreover, the CBA provides that it is the employee's duty and responsibility to notify his supervisor that he was not able to take a meal (or rest period) at the time the meal/rest period was missed." *Id.*

As stated earlier, "interpretation" of a CBA is "construed narrowly" in the context of determining whether a state-law claim is "substantially dependent" on the CBA at issue. *Curtis*, 913 F.3d at 1153. Claims are "only preempted to the extent there is an active dispute over 'the meaning of contract terms.'" *Id.* (quoting *Schurke*, 898 F.3d at 921). Defendant has not shown that there is an active dispute as to the meaning of terms relevant to meal and rest breaks in the CBA. Nor has Defendant presently shown how particular requirements of the CBA effect a waiver of meal or rest periods will require more than simple reference or application. *See Kobold*, 832 F.3d at 1033. Accordingly, the Motion to Dismiss is **DENIED** as to the Second and Third Causes of Action as to preemption of state-law claims for meal and rest periods. However, this determination is without prejudice to a subsequent review if an active dispute arises as to the scope or meaning of the CBA that would require the type of interpretation identified in *Kobold* as warranting preemption.

(3)     <u>Fourth Cause of Action</u>

The Fourth Cause of Action alleges a violation of Cal. Lab. Code §§ 1194, 1197, and 1197.1 for unpaid minimum wages. Minimum wage claims under Cal. Lab. Code. § 1194 are not exempt under Cal. Lab. Code § 514. Therefore, they involve a state law right that does not exist solely because of the CBA. *See Parker v. Cherne Contracting Corp.*, No. 18-CV-01912-HSG, 2019 WL 359989, at *6 (N.D. Cal. Jan. 29, 2019). *Parker* explained that courts routinely allow wage and hour claims "based on a failure to compensate at all for certain hours allegedly worked." *Id.* at *6. That a CBA defines wages for employees does not create a dispute about CBA terms. *Id.* Because the Fourth Cause of Action relies on Section 1194 and does not require interpretation of the CBA, the Fourth Cause of Action is not preempted under LMRA and the Motion to Dismiss is **DENIED** as to the Fourth Cause of Action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|---|---|---|---|
| Title | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

    (4)    <u>Fifth through Tenth Causes of Action</u>

The Motion to Dismiss relies on *Parker* for the proposition that claims derivative of preempted claims should be dismissed (Dkt. 10-1 at 12). However, *Parker* held that minimum wage claims were not preempted by LMRA and did not dismiss those advanced there as derivative. 2019 WL 359989 at *6. *Parker* declined to dismiss a PAGA cause of action "based in part on Plaintiff's minimum wage claim," because the minimum wage claim under Section 1194 had not been preempted. *Id.*

Defendant argues that the remaining causes of action are "derivative" of either the First Cause of Action for overtime compensation, or the Second and Third Causes of Action for meal and rest periods. Dkt. 10-1 at 12-14. The Fourth Cause of Action alleges a failure to pay a minimum wage. Dkt. 1-1 ¶¶ 78-83. The Fifth and Sixth Causes of Action allege failure to pay timely wages either after separation or during employment. *Id.* ¶¶ 84-95. The Seventh Cause of Action alleges a failure to provide accurate itemized wage statements. *Id.* ¶¶ 96-102. The Eighth Cause of Action alleges a failure to maintain payroll records. *Id.* ¶¶ 103-107. The Ninth Cause of Action alleges a failure to reimburse business expenses. *Id.* ¶¶ 108-112. The Tenth Cause of Action alleges a violation of Cal. Bus. & Prof. Code § 17200 based on the other state law violations alleged in the Complaint. *Id.* ¶ 113-119.

As discussed above, the First Cause of Action is preempted. The Second, Third and Fourth Causes of Action are not preempted based on the allegations in Complaint.

Certain portions of some of these remaining causes of action may rely, in part, on the preempted first cause of action. For example, as to the Fifth, Sixth and Seventh Causes of Action, whether wages were timely and accurately paid and accurate itemized wage statements provided, may rely in part on whether overtime wages were accurately recorded and paid. Although some of these remaining causes of action may be based in part on the alleged failure to pay proper overtime compensation, e.g., the First Cause of Action that is preempted, they may also be based on the alleged failure to pay minimum wages, i.e., the Fourth Cause of Action, which is not preempted. To the extent that remaining causes of action do not rely on an overtime compensation violation under § 510, they survive. *See Parker*, 2019 WL 359989, at *6 (declining to dismiss cause of action that relied upon un-preempted minimum wage claim). To the extent that such remaining causes of action do rely on the preempted First Cause of Action, they are derivatively preempted. *Id.* (dismissing with leave to amend those causes of action that relied upon the preempted claims).

For these reasons, the Motion to Dismiss is **GRANTED-IN-PART** and the Fifth through Tenth Causes of Action are **DISMISSED WITHOUT PREJUDICE** and with leave to amend to present allegations not premised on overtime compensation violations in the First Cause of Action that are preempted. The Motion to Dismiss is **DENIED-IN-PART** as to the Fifth through Tenth Causes of Action to the extent those claims do not rely on the First Cause of Action.

**IV.**    <u>Conclusion</u>

For the reasons stated in this Order, the Motion to Remand (Dkt. 12) is **DENIED**. The Motion for Leave (Dkt. 21) is **GRANTED**. The Motion to Dismiss (Dkt. 10) is **GRANTED-IN-PART** and **DENIED-IN-PART** as follows:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-07662 JAK (KSx) | Date | October 6, 2020 |
|---|---|---|---|
| Title | Anthony Loaiza et al. v. Kinkisharyo International, LLC et al. | | |

1. The Motion to Dismiss is **DENIED** as to the failure to grieve or arbitrate.
2. The Motion to Dismiss is **GRANTED WITH PREJUDICE**, i.e., without leave to amend, as to the preemption of the First Cause of Action.
   3. The Motion to Dismiss is **GRANTED-IN-PART** as to the preemption of the Fifth through Tenth Causes of Action to the extent that those claims are derivative of the First Cause of Action.
   4. The Motion to Dismiss is **DENIED** as to the preemption of the Second, Third and Fourth Causes of Action.
   5. The Motion to Dismiss is **DENIED-IN-PART** as to the preemption of the Fifth through Tenth Causes of Action to the extent those claims do not rely on the First Cause of Action.

Any amended complaint shall be filed within 14 days of the issuance of this Order. Defendant shall answer or otherwise respond within 14 days of the date on which an amended complaint is filed.

**IT IS SO ORDERED.**

                                                                    :        00

                                        Initials of Preparer   PB